☑ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   22-897M(NJ) |
| information between May 1, 2021 and Present Date, associated with the Facebook vanity name "Juggblac Wilson" – User ID # 100000949815781 (Fully described in Attachment A) | ) ) ) ) | **Matter No.: 2022R00114** |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A. Over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before      6/1/22      *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      5/18/22 @ 12:14 p.m. _____      *Nancy Joseph*
                                                                                                    *Judge's signature*

City and state:      Milwaukee, WI _____      Hon. Nancy Joseph, U.S. Magistrate Judge
                                                                                        *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**

This warrant applies to information between May 1, 2021 and Present Date, associated with the Facebook vanity name "Juggblac Wilson" – User ID # 100000949815781, https://www.facebook.com/jaquan.b.breezy that are stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a social networking company headquartered in Menlo Park, California.

**ATTACHMENT B**
**Particular Things to be Seized**

**I. Information to be disclosed by Meta Platforms, Inc.**

1.      To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

    a.   All contact and personal identifying information, including**:** full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

    b.   All activity logs for the account and all other documents showing the user's posts and other Facebook activities from May 1, 2021 to the present;

    c.   All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them from May 1, 2021 to the present;

    d.   All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments;

gifts; pokes; tags; and information about the user's access and use of Facebook applications;

e. All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

f. All "check ins" and other location information;

g. All IP logs, including all records of the IP addresses that logged into the account;

h. All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

i. All information about the Facebook pages that the account is or was a "fan" of;

j. All past and present lists of friends created by the account;

k. All records of Facebook searches performed by the account from May 1, 2021 to the present;

l. All audio messages sent by the account and messages received by the account from May 1, 2021 to the present;

m. All video messages sent by the account and to the account;

n. Any and all location data that is recorded by Facebook related to the account;

o. All information about the user's access and use of Facebook Marketplace;

p. The types of service utilized by the user;

q. The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

r.  All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

s.  All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

1.  All information described above that constitutes fruits, evidence and instrumentalities of violations of Title 18, U.S.C. 922(a)(6) (lying and buying) and Title 18 U.S.C. 922(g)(1) (Felon in Possession of a Firearm) since May 21, 2021.

a.  The relevant offense conduct, any preparatory steps taken in furtherance of the scheme, communications between the suspect and others related to the relevant offense conduct in the above-listed crimes;

b.  Evidence indicating how and when the Instagram account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Instagram account owner;

c.  Evidence indicating the Instagram account owner's state of mind as it relates to the crime under investigation;

d.  The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

3

e. The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of the above-listed crimes, including records that help reveal their whereabouts.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>information between May 1, 2021 and Present Date, associated with the<br>Facebook vanity name "Juggblac Wilson" – User ID # 100000949815781<br>(Fully described in Attachment A) | )<br>)<br>)<br>)<br>)<br>) |

Case No.   22-897M(NJ)

## Matter No.: 2022R00114

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A. Over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 922(a)(6);<br>18 U.S.C. 922(g)(1) | Felon in possession of a firearm; straw purchasing. |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

❑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

FRANK RUTTER
Digitally signed by FRANK RUTTER
Date: 2022.05.16 17:20:54 -05'00'

_____
*Applicant's signature*

SA Frank Rutter, ATF
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone _____ *(specify reliable electronic means)*.

Date:   5/18/22

_____
*Judge's signature*

City and state:   Milwaukee, WI

Hon. Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Frank Rutter, being first duly sworn, hereby depose and state as follows:

## **INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California.   The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the account.

2.     I am employed with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since 2015.  As an ATF Agent, I have conducted numerous investigations involving violations of federal and state laws including violations of 18 U.S.C. § 922(a)(6), commonly referred to as "lying and buying" as well as investigations related to the unlawful use/possession of firearms and firearms trafficking; investigations involving violations of 21 U.S.C. § 841(a)(1) and 846 (conspiracy to possess with the intent to distribute and distributing a controlled substance); and investigations involving violations of 18 U.S.C. § 1956 (money laundering).   I have had a variety of formal, informal, and on the job training in the investigation of illegal firearms possession and firearms trafficking; I have participated in the execution of search warrants in which firearms, ammunition and controlled substances were seized; and I am familiar with the street name(s) of firearms, controlled substances and respective related topics.

3.      During the course of my career, I have conducted criminal investigations involving the use of social media.  Additionally, I have received training and instruction regarding the use of social media sites by criminal elements.  I have conducted previous criminal investigations in which internet research that I conducted yielded the use of social media by suspects.  Specifically, I know from my training and experience that alleged suspects of criminal activity, who have accounts on social media websites, will often communicate their criminal intentions or past activity via "instant message" or "in-box message" on a given social media website.  The "instant message" / "in-box message" is a private communication from one user to another.  Furthermore, I know through experience that many social media users often use social media websites as their primary means to communicate with others.  Additionally, I know from training and experience that suspects who use social media websites sometimes post photographs of themselves possessing incriminating items, such as narcotics, unexplained large amounts of cash, and firearms.  Also, suspects in criminal investigations have been known to post statements and/or lyrics on social websites referencing their own criminal activity.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      Based on my training, experience, and the facts as set forth in this affidavit, there is probable cause to believe that Jaquan M. Wilson (DOB: 1994) committed a violation of 18 U.S.C. § 922(g)(1). There is also probable cause to search the information described in Attachment A for evidence of this crime, as described in Attachment B.

2

## TARGET ACCOUNT TO BE SEARCHED

Facebook account showing vanity name "Juggblac Wilson" with Facebook User ID # 100000949815781, https://www.facebook.com/jaquan.b.breezy.

## PROBABLE CAUSE

6.      On July 29, 2021, the Wisconsin State Patrol (WSP) conducted a traffic stop on a vehicle traveling northbound on Interstate 41 in Appleton, Wisconsin located within the Eastern District of Wisconsin. The vehicle can be described in more detail as a 2014, white in color, Toyota bearing Wisconsin license plate CB34802 and VIN: 4T1BD1FK7EU103830.  The driver and sole occupant, identified as Jaquan M. Wilson (DOB: 1994), was arrested for several offenses including felon in possession of a firearm.  Recovered from the vehicle were numerous items of evidentiary value including, but not limited to, two (2) firearms, suspected marijuana, a Dremel set and a cellular phone. It should be noted the cellular phone had a sticker affixed to the back identifying it as having telephone number 618-713-6265.  Affiant is aware that one (1) of the recovered firearms had an obliterated serial number.  The firearms can be described in further detail as:

- Manufacturer: Sarsilmaz, Importer: SAR USA, Model: SAR 9, Caliber: 9mm, SN: T1102-21BV87638, Type: Pistol; and

- Manufacturer: Taurus, Importer: Taurus International, Model: The Judge, Caliber: 45/410, SN: OBLITERATED, Type: Revolver.

7.       Wilson has a felony conviction from Cook County, Illinois, Case 2013CR155110 for Armed Robbery, and he is therefore federally prohibited from possessing firearms.

3

**Firearm Tracing Information**

8.      Affiant reviewed ATF eTrace information for the above referenced Sarsilmaz pistol bearing serial number T1102-21BV87638.  Affiant learned this firearm was purchased on July 29, 2021 at Tom's Military Arms & Guns (FFL: 3-39-08841) located at 355 N. Main Street in Fond Du Lac, Wisconsin.  The firearm was purchased by Brianna E. Leichtenberg (DOB: 1995).  Affiant is aware Leichtenberg provided her telephone number as 920-251-2541 during the firearm purchase. During this purchase, Leichtenberg was required to complete various documents including ATF Form 4473 which is a firearm purchase record required by federal law to be completed when a Federal Firearm Licensee (FFL) transfers a firearm to anyone who does not possess an FFL.  ATF Form 4473 documents specifically which firearm/s were sold and to whom they were transferred.  Leichtenberg answered "yes" to question 21(a) which stated:

> "Are you the actual transferee/buyer of the firearm(s) listed on this form? Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person.  If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you."

9.      Affiant is aware through review of firearm purchase paperwork that the Sarsilmaz pistol bearing serial number T1102-21BV87638 was documented as being transferred to Leichtenberg at 1901 hours on July 29, 2021.  Records show the initial background check was submitted at 1851 hours on July 29, 2021.  Affiant is also aware the traffic stop resulting in the recovery of the aforementioned firearm and arrest of Wilson was initiated at approximately 2149 hours on July 29, 2021.

10.      Affiant reviewed call detail records (CDR) for telephone number 920-251-2541 belonging to Leichtenberg and observed the below listed communications occurring before and

4

after the aforementioned firearm transfer with telephone number 618-713-6265. Affiant is aware telephone number 618-713-6265 was labeled on the backside of the cellular phone recovered from Wilson during his arrest on 7/29/21.

- 7/29/21 at 1817 hours – 35 second call
- 7/29/21 at 1817 hours – SMS text message
- 7/29/21 at 1825 hours – 21 second call
- 7/29/21 at 1912 hours – 57 second call
- 7/29/21 at 1913 hours – 22 second call
- 7/29/21 at 1925 hours – SMS text message

11.     Affiant knows, from his training and experience that individuals who cannot legally purchase firearms as a result of previous felony convictions will often recruit "straw purchasers" to illegally obtain firearm/s on their behalf. These "straw purchases" are often completed with the intent to conceal the true identity of the intended recipient of the firearm. These types of transactions are commonly conducted for financial gain of the "straw purchaser" or as the result of a relationship (familial/romantic/platonic) between the previously convicted felon and the original purchaser. When a firearm is recovered by law enforcement, the firearm information is generally submitted for tracing information. This tracing information can help to identify the origin of the firearm. A common indicator of firearm straw purchasing can be relative short timespans between the purchase of a firearm and its ultimate recovery by law enforcement. Affiant is aware that illegal firearms possessors also sometimes attempt to remove the identifying information from the firearm in an attempt to conceal the origins of the firearm. Under these circumstances, the short "time to crime" and the obliterated serial number were viewed as an investigative lead into the firearm purchasing habits of Leichtenberg.

5

## Review of Leichtenberg Facebook Account

12.     Affiant reviewed Facebook data concerning the Facebook account belonging to Leichtenberg with user ID 100053103860857. The data was obtained via a federal search warrant authorized by Federal Magistrate Judge Stephen Dries, United States District Court, Eastern District of Wisconsin on April 11, 2021.

13.     Affiant reviewed exchanged messages between Leichtenberg and Nathaniel Endres (DOB: 1992) occurring between July 30, 2021 and August 2, 2021. Below is some of the observed exchange between Leichtenberg and N. Endres:

- 7/30/21 at 1034 hours, Leichtenberg sent, "Man cant believe this shit happened"

- 7/30/21 at 1034 hours, Leichtenberg sent, "Im so keeping my shit"

- 7/30/21 at 1034 hours, Leichtenberg sent, "Im a take my money and when I get the gun im keeping it"

- 7/30/21 at 1037 hours, N. Endres sent, "…Just hearing about all your stuff, I'm surprised you're not sweatin"

14.     Affiant is aware on August 2, 2021 at 1136 hours, Leichtenberg and N. Endres began discussing what Leichtenberg should say to law enforcement regarding the firearm. N. Endres provided assistance with Leichtenberg's statement and provided her with an updated draft. N. Endres advised Leicthenberg to remove portions of the statement that explained why she purchased the firearm and to instead state she purchased the firearm for protection. A later draft contained the name "jaquan".

## Account "Juggblac Wilson" with Facebook User ID # 100000949815781

15.     Affiant is aware of a recorded jail call placed by Wilson on July 31, 2021 at 0837 hours to telephone number 920-791-7727 where he spoke with a known associate. Wilson could

6

be heard asking the person to contact "Bleek Taratino" on Facebook. Wilson explained he (Wilson) needed to maintain communication with "Bleek Taratino." Wilson stated, "I gotta keep him in the loop, so when I come home…I can still be…he can put me in a position to get my name back."

16.     Affiant located the Facebook page bearing vanity name "Juggblac Wilson" (https://www.facebook.com/jaquan.b.breezy) and compared publicly viewable photographs with an Illinois driver's license image for Wilson dated May 4, 2021. Affiant found the images to be consistent and represent the same individual.

17.     Affiant is aware that since Wilson's arrest, his Facebook account has posted publicly viewable updates on November 11, 2021, November 19, 2021 and November 27, 2021. Wilson has been incarcerated since his arrest on July 29, 2021 and has not been released suggesting someone else has access to, and has been using, Wilson's Facebook account. Affiant believes it is reasonable that communication regarding Wilson's arrest and the firearm straw purchase conspiracy is housed within the Facebook account belonging to Wilson.

18.     Affiant knows that subjects involved in crimes with other subjects often need to use the mediums of communication to coordinate the crime, such as Facebook. Affiant knows that subjects who traffic firearms and illegally possess firearms often use their cellphones to take pictures of the firearms and also to take pictures of themselves with the firearms. Affiant is aware that those images are commonly communicated through social media mediums such as Facebook. Affiant is aware those who are prohibited from legally purchasing/possessing firearms must obtain firearms through other means, often times through a straw purchaser. A straw purchase can be described as the event where someone who can legally purchase/possess a firearm purchases a firearm on behalf of someone else. This is done in an effort to conceal the

7

true identity of the intended recipient. Affiant is aware this is a commonly utilized technique by those previously convicted of felonies who seek to obtain firearms.

19.     Affiant believes additional information relevant to the investigation involving violations of Title 18, U.S.C. 922(a)(6) (lying and buying), Title 18 U.S.C. 922(g)(1) (Felon in Possession of a Firearm) and Title 18 U.S.C. 371 (Conspiracy) is housed within the aforementioned Facebook account belonging to J. Wilson.

## FACEBOOK INFORMATION

20.     Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com.  Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

21.     Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, e-mail addressees, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Each Facebook user is assigned a user identification number and can choose a username.

22.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account

8

includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

23.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

24.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

25.     Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" other users in a photo or video and can be tagged by others. When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

9

26.     Facebook users can use Facebook Messenger to communicate with other users via text, voice, video.  Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and also retains transactional records related to voice and video chats. of the date of each call.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

27.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

28.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

29.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

30.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

31.     Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

32.     In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform.  When a Facebook user

10

accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

33.    Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform.  For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

34.    Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

35.    Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

36.    As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can

11

indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

37. Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

38.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

**CONCLUSION**

39.     Based on the forgoing, I request that the Court issue the proposed search warrant and I submit that this Affidavit supports probable cause for a search warrant authorizing the search of the Facebook account belonging to J. Wilson further described in Attachment A for the items of evidence described in Attachment B.

40.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court of the Eastern District of Wisconsin is a district court of the United States that has jurisdiction over the offense(s) being investigated, 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

13

## <u>ATTACHMENT A</u>
## Property to Be Searched

This warrant applies to information between May 1, 2021 and Present Date, associated with the Facebook vanity name "Juggblac Wilson" – User ID # 100000949815781, https://www.facebook.com/jaquan.b.breezy that are stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a social networking company headquartered in Menlo Park, California.

**ATTACHMENT B**
**Particular Things to be Seized**

**I.  Information to be disclosed by Meta Platforms, Inc.**

1.      To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

a.  All contact and personal identifying information, including**:** full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

b.  All activity logs for the account and all other documents showing the user's posts and other Facebook activities from May 1, 2021 to the present;

c.  All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them from May 1, 2021 to the present;

d.  All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments;

gifts; pokes; tags; and information about the user's access and use of Facebook applications;

e.   All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

f.   All "check ins" and other location information;

g.   All IP logs, including all records of the IP addresses that logged into the account;

h.   All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

i.   All information about the Facebook pages that the account is or was a "fan" of;

j.   All past and present lists of friends created by the account;

k.   All records of Facebook searches performed by the account from May 1, 2021 to the present;

l.   All audio messages sent by the account and messages received by the account from May 1, 2021 to the present;

m.   All video messages sent by the account and to the account;

n.   Any and all location data that is recorded by Facebook related to the account;

o.   All information about the user's access and use of Facebook Marketplace;

p.   The types of service utilized by the user;

q.   The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

r.  All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

s.  All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

1.  All information described above that constitutes fruits, evidence and instrumentalities of violations of Title 18, U.S.C. 922(a)(6) (lying and buying) and Title 18 U.S.C. 922(g)(1) (Felon in Possession of a Firearm) since May 21, 2021.

a.  The relevant offense conduct, any preparatory steps taken in furtherance of the scheme, communications between the suspect and others related to the relevant offense conduct in the above-listed crimes;

b.  Evidence indicating how and when the Instagram account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Instagram account owner;

c.  Evidence indicating the Instagram account owner's state of mind as it relates to the crime under investigation;

d.  The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

3

e.  The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of the above-listed crimes, including records that help reveal their whereabouts.

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS
RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)**

I, _____, attest, under penalties of perjury under the

laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information

contained in this declaration is true and correct. I am employed by Meta (Facebook), and my

official title is _____. I am a custodian of records for Meta

(Facebook). I state that each of the records attached hereto is the original record or a true

duplicate of the original record in the custody of Facebook, and that I am the custodian of the

attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of

the matter set forth, by, or from information transmitted by, a person with knowledge of those

matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity

of Facebook; and

c.      such records were made by Meta (Facebook) as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal

Rules of Evidence.


_____          _____
Date                                              Signature